# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JACK ADLER, ) | |
|       Plaintiff, ) | |
|       v. ) | 3:11-CV-238-RCJ-VPC |
| ) | **ORDER** |
| UNITED STATES OF AMERICA, UNITED ) STATES EQUAL EMPLOYMENT ) OPPORTUNITY COMMISSION, ) | |
|       Defendants. ) | |

_____

Currently before the Court is a Motion to Dismiss (#10). The Court heard oral argument on January 3, 2012.

## BACKGROUND

In May 2011, Plaintiff Jack Adler filed his First Amended Complaint ("FAC") against Defendants Stuart Ishimaru, in his official capacity as Acting Chairman of the U.S. Equal Employment Opportunity Commission ("EEOC"), and Dana Johnson, David Offen-Brown, and William Tamayo, individually. (FAC (#3) at 1). According to the FAC, Johnson, Offen-Brown, and Tamayo were EEOC attorneys assigned to prosecuting the EEOC's lawsuit on Plaintiff's behalf. (*Id.* at 2). The FAC alleged the following. (*Id.* at 3). In 2002, Plaintiff had been subjected to severe discrimination and hostility based on his religion, Judaism, at his place of employment at a Reno car dealership. (*Id.*). In response to the discrimination, the owner of the dealership terminated Plaintiff in 2007. (*Id.*). After his termination, Plaintiff filed a complaint with the EEOC. (*Id.*). During the EEOC's investigation, the EEOC found significant evidence of discrimination and hostile work environment based on Plaintiff's Jewish religion.

(*Id.*). In September 2007, the EEOC initiated a Title VII case in federal court[1] and sought money damages for Plaintiff. (*Id.*). In November 2007, Plaintiff, through his private attorney, intervened into the case. (*Id.* at 4).

The complaint alleged that over the next 30 months, the EEOC and Plaintiff's attorney split litigation duties and prepared for trial. (*Id.*). An economist expert valued Plaintiff's case at $2,000,000. (*Id.*). Two weeks prior to trial, Johnson and Plaintiff's wife, Debra Alder ("Debra"), had a telephone conversation. (*Id.*). Based on the time that the two had been working together, Debra believed Johnson was "not only . . . legal counsel but . . . also . . . a valued ally in the fight against discrimination." (*Id.*). Debra told Johnson that Plaintiff had had a "'breakthrough' in psychological therapy and that Plaintiff had acknowledged strong emotional feelings towards his former employer and co-workers." (*Id.*). Debra informed Johnson that the therapist had characterized Plaintiff's statement as "real progress." (*Id.*). In response, Johnson told Debra that Plaintiff's statements constituted an improper threat upon Plaintiff's former employer and that she was mandated to withdraw from the case and notify Plaintiff's former employer. (*Id.*). Within "hours" of the conversation, Johnson, without speaking to Plaintiff or his therapist, told Plaintiff's attorney that the EEOC was dismissing the case. (*Id.* at 5). Due to Johnson's "imminent withdraw, Plaintiff's personal counsel was forced to settle the case for whatever could be salvaged." (*Id.*). Neither Johnson nor any other employee of the EEOC ever notified Plaintiff's former employer of the alleged threat. (*Id.*).

The complaint alleged the following causes of action: (1) legal malpractice-negligence against the EEOC and Johnson; (2) First Amendment violation against the EEOC for denying access to the courts; (3) due process violation against the EEOC for failing to contact Plaintiff or Plaintiff's therapist before withdrawing and depriving Plaintiff of a property interest in the legal action; and (4) tortious interference against Defendants for intentionally hindering Plaintiff's attorney-client relationship with his private attorney to preclude "a fair and equitable financial recovery." (*Id.* at 5-8). Plaintiff sought compensatory damages in an amount to be

---

[1] The case was *EEOC v. Champion Chevrolet et al.*, case no. 3:07-cv-444-ECR-VPC.

1  shown at trial, special damages in excess of $2,000,000, general damages in excess of
2  $2,000,000, punitive damages in excess of $2,000,000, attorney's fees, and costs. (*Id.* at 8-9).
3      In July 2011, this Court granted the Attorney General's motion to substitute the United
4  States for individual defendants because the individual defendants had been acting as agents
5  at all relevant times according to the FAC. (Substitution Order (#9)). The Court substituted
6  the United States as the Defendant and dismissed Ishimaru, Johnson, Offen-Brown, and
7  Tamayo from the case. (*Id.* at 1-2).
8      The motion to dismiss now follows.

## DISCUSSION

10      The government moves to dismiss the complaint pursuant to Federal Rule of Civil
11  Procedure 12(b)(1), (2), (5), and (6). (Mot. to Dismiss (#10) at 1). The government argues
12  that the tortious interference claim is barred by the doctrine of sovereign immunity and the
13  failure to exhaust administrative remedies. (*Id.* at 6). The government asserts that the United
14  States has not waived its sovereign immunity for claims arising out of interference with
15  contract rights pursuant to the explicit language in the Federal Tort Claims Act ("FTCA"). (*Id.*).
16  The government asserts that Plaintiff's claims for First Amendment and due process violations
17  are barred by the doctrine of sovereign immunity because the United States has not
18  consented to be sued for constitutional torts. (*Id.* at 7). The government asserts that the legal
19  malpractice-negligence claim is barred by the doctrine of sovereign immunity because the
20  United States has not consented to be sued for legal malpractice by the EEOC. (*Id.*). The
21  government also argues that the EEOC's litigation enforcement activities are protected by
22  discretionary immunity. (*Id.* at 8). The government also asserts that the complaint fails to
23  state a claim for relief. (*Id.* at 11-15). The government argues that the Court should dismiss
24  the case because Plaintiff has not perfected service of process upon the United States. (*Id.*
25  at 15).
26      In response, Plaintiff argues that the FTCA permits him to pursue his
27  malpractice/negligence claim because malpractice is actionable under Nevada law. (Opp'n
28  to Mot. to Dismiss (#13) at 6). Plaintiff asserts that, under state law, he had an implied-in-

contract attorney-relationship with the EEOC. (*Id.* at 7). Plaintiff argues that he can bring his constitutional claims via *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (*Id.* at 19). Plaintiff argues that Defendant waived sovereign immunity under the FTCA for the tortious interference claim because Defendant acted like Plaintiff's counsel. (*Id.* at 20). Plaintiff argues that he has stated a claim for relief and that he has perfected service. (*Id.* at 24-26).

In reply, the government argues that Plaintiff's opposition ignores Supreme Court and Ninth Circuit law that bar his claims. (*See* Reply to Mot. to Dismiss (#17) at 1-2). Additionally, the government notes that *Bivens* does not apply to this suit because all of the individually named Defendants in this case were dismissed and that the remaining Defendants are the United States and the EEOC.[2] (*Id.* at 4).

The Federal Employees Liability Reform and Tort Compensation Act ("FELRTCA") immunizes United States employees from liability for their "negligent or wrongful act[s] or omission[s] . . . while acting within the scope of [their] office or employment." 28 U.S.C. § 2679(b)(1); *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993). The Attorney General certifies whether a United States employee was acting within the scope of his or her employment at the time of an event giving rise to a civil claim. 28 U.S.C. § 2679(d)(1), (2). Once certification is given in a civil action, FELRTCA requires the substitution of the United States as the defendant. *Id.* Under the terms of FELRTCA, the substitution of the United States leaves the plaintiff with a single avenue of recovery, the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 1346 *et seq.* 28 U.S.C. § 2679(d)(4).

"Although the Attorney General's certification is conclusive for purposes of removal, the certification is subject to judicial review for purposes of substitution." *Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995). "Certification by the Attorney General is prima facie evidence that a federal employee was acting in the scope of her employment at the time of the incident and is conclusive unless challenged." *Id.* "A plaintiff may challenge the Attorney

---

[2] During oral argument, the Assistant United States Attorney made a verbal correction to her motion and stated that the only defendant remaining in the case was the United States.

4

General's scope of employment certification in the district court." *Green*, 8 F.3d at 698. The plaintiff bears the "burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence." *Id.*

In this case, the Court finds that Plaintiff has waived his ability to challenge whether the substituted federal employees were acting within the scope of their employment at the time of the incident. The Attorney General filed a motion to substitute parties on June 24, 2011. (*See* Mot. to Substitute (#8)). Plaintiff did not file any objections. (*See generally* Docket Sheet). On July 21, 2011, this Court granted the Attorney General's motion to substitute parties. (Substitution Order (#9)). As of the date of oral argument, January 3, 2012, Plaintiff has not made any challenges to the Attorney General's certification. As such, the Court finds that Plaintiff has waived his ability to make any challenges and finds that the Attorney General's certification is conclusive.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). "Sovereign immunity is jurisdictional in nature." *Id.*

The Court dismisses, without leave to amend, Plaintiff's first cause of action for legal malpractice-negligence. (*See* FAC (#3) at 5). The Ninth Circuit has held that Congress "neither expressly nor impliedly provided for an action against the EEOC for negligence." *Ward v. EEOC*, 719 F.2d 311, 312 (9th Cir. 1983). Congress originally enacted Title VII in 1964 and limited the EEOC's function to the investigation of employment discrimination charges and conciliation efforts. *See Williams v. United States*, 665 F.Supp. 1466, 1469 (D. Or. 1987). "Enforcement could only be accomplished by a private law suit by an aggrieved person." *Id.* In 1972, Congress amended Title VII to empower the EEOC to bring a suit on its own against a private employer alleged to have violated the Act. *See Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 357, 97 S.Ct. 2447, 2450, 53 L.Ed.2d 402 (1977). The EEOC action did not substitute the EEOC action for an action brought by a private person. Instead, the retention of the private right of action provided the aggrieved party to pursue his

or her own remedy under Title VII "where there [was] agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution." *Occidental*, 432 U.S. at 365-66, 97 S.Ct. at 2454.

The purpose of the 1972 amendments was "to implement the public interest as well as to bring about more effective enforcement of private rights." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 326, 100 S.Ct. 1698, 1704, 64 L.Ed.2d 319 (1980). "The amendments did not transfer all private enforcement to the EEOC and assign to that agency exclusively the task of protecting private interests. The EEOC's civil suit was intended to supplement, not replace, the private action." *Id.* The Supreme Court has held that:

> the EEOC is authorized to proceed in a unified action and to obtain the most satisfactory overall relief even though competing interests are involved and particular groups may appear to be disadvantaged. The individual victim is given his right to intervene for this very reason. The EEOC exists to advance the public interest in preventing and remedying employment discrimination, and it does so in part by making the hard choices where conflicts of interest exist.

*Id.* at 331, 100 S.Ct. at 1707.

There are no Supreme Court or Ninth Circuit cases that explicitly hold that there are no attorney-client relationships between the EEOC and aggrieved parties for legal malpractice purposes. However, based on the aforementioned Supreme Court law, it is clear that Congress gave the EEOC the power to bring lawsuits against alleged violators for the purpose of representing the public interest. In recognizing that the public interest may conflict with an aggrieved person's interest, Congress gave the aggrieved person the right to intervene in order to protect his or her own interests. Therefore, as a matter of law, the EEOC cannot engage in an attorney-client relationship with an aggrieved person because the EEOC does not represent that person's interest. As such, Plaintiff cannot state a cause of action for legal malpractice because no attorney-client relationship can exist between Plaintiff and the EEOC. Accordingly, the Court dismisses Plaintiff's legal malpractice-negligence claim, without leave to amend.

The Court dismisses, without leave to amend, Plaintiff's second and third claims for First Amendment and due process violations. (*See* FAC (#3) at 6-7). In his response, Plaintiff argues that he is suing the United States and the EEOC pursuant to *Bivens*. (*See* Opp'n to

Mot. to Dismiss (#13) at 19-20). The Supreme Court has held that an individual may not bring a *Bivens* claim for damages directly against a federal agency. *See FDIC v. Meyer*, 510 U.S. 471, 473, 483-84, 114 S.Ct. 996, 999, 1004-05, 127 L.Ed.2d 308 (1994); *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1255 (9th Cir. 1997). As such, the Court dismisses Plaintiff's second and third causes of action because he may not bring a *Bivens* claim against the United States and the EEOC. The Court notes that *Bivens* claims may be brought against the EEOC attorneys in their individual capacities to redress violations of Plaintiff's constitutional rights. *See Janicki Logging Co. v. Mateer*, 42 F.3d 561, 563 (9th Cir. 1994); *see also* 28 U.S.C. § 2679(b)(2)(A) (stating that *Bivens* claims are excepted from the certification and substitution procedures of FELRTCA). However, the Court notes that Plaintiff's FAC only raises constitutional claims against the EEOC itself. (*See* FAC (#3) at 6-7). The Court grants Plaintiff leave to amend the complaint to add *Bivens* claims against individual defendants.

The Court dismisses, without leave to amend, Plaintiff's fourth cause of action for tortious interference with contractual rights. (*See* FAC (#3) at 8). The FTCA waives the sovereign immunity of the United States for certain torts committed by federal employees. *See* 28 U.S.C. § 1346(b)(1). However, the FTCA explicitly states that the waiver of sovereign immunity under § 1346(b) does not apply to "[a]ny claim arising out of . . . interference with contract rights." 28 U.S.C. § 2680(h). As such, the Court dismisses Plaintiff's fourth cause of action because this Court lacks jurisdiction to hear the claim.

///
///
///
///
///
///
///
///
///

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Motion to Dismiss (#10) is GRANTED. The Court only grants Plaintiff leave to amend to add *Bivens* claims against the EEOC attorneys in their individual capacities. Plaintiff may not amend the other causes of action addressed in this motion to dismiss order.

Dated this 10th day of January, 2012.

_____
United States District Judge